IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| EDWARD C. HUGLER, ACTING SECRETARY OF LABOR, | * | |
| | * | |
| Plaintiff, | | |
| v. | * | Case No.: GJH-16-2052 |
| LOCAL 689, AMALGAMATED TRANSIT UNION, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This dispute involves a union officer election held by Defendant Local 689, Amalgamated Transit Union ("the Union"), on December 2, 2015. Thomas E. Perez, then Secretary of the U.S. Department of Labor ("the Secretary")[1] brought this action under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481–84, to void the election and conduct a new election under the supervision of the Secretary. The parties have filed cross-motions for summary judgment. ECF No. 13; ECF No. 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, the Secretary's Motion for Summary Judgment, ECF No. 13, is granted, and the Union's Motion for Summary Judgment, ECF No. 21, is denied.

**I.    BACKGROUND**

The material facts are essentially undisputed. Local 689 is the collective bargaining representative for approximately 13,535 active and retired transit, maintenance, and clerical

---

[1] Edward C. Hugler became Acting Secretary of Labor on January 20, 2017. Pursuant to Fed. R. Civ. P. 25(d), Hugler will be substituted for former Secretary Thomas E. Perez.

employees of the Washington Metropolitan Area Transit Authority (WMATA) and three paratransit contractors. *See* ECF No. 13-28 at 5.[2] Approximately 570 union members live outside the Washington, D.C., Maryland, and Northern Virginia areas. *See id.* The Union is a labor organization subject to the provisions of Title IV of the LMRDA, including Section 401(e), codified at 29 U.S.C. § 481(e), which governs notice of elections and eligibility to vote and run for office. Section 401(e) also mandates that a union conducts elections pursuant to the union's constitution and bylaws. 29 U.S.C. § 481(e).

The Union holds a general election for all offices every three years. ECF No. 13-3 at 37. The most recent election was held on December 2, 2015. *See* ECF No. 13-33 at 1. Under Section 401(e) of LMRDA, "[n]ot less than fifteen days prior to the election, notice thereof shall be mailed to each member at his [or her] last known home address." 29 U.S.C. § 481(e); *see also* 29 C.F.R. § 452.99. The Union's Local Bylaws also provide for a fifteen-day notice period. ECF No. 13-4 at 24 (Section 11(b)). In advance of the December 2, 2015 election, the Union sent notices to members on November 18, 2015, only fourteen days prior to the election. *See* ECF No. 13-34 at 4; ECF No. 21-7 at 2–4. Approximately 5,468 members voted in the election and 8,067 members did not vote. *See* ECF No. 13-29 at 1. An investigation conducted by the Secretary following the election allegedly identified at least twelve members who stated that they did not receive notice of the election. *See* ECF No. 13-1 at 33 (citing ECF No. 13-29).

Under the Amalgamated Transit Union Constitution and General Laws ("CGL"), to be eligible to run for office, a member must be in continuous "good standing" with his or her Local Union for two years preceding nomination. *See* ECF No. 13-3 at 37–38 (Section 14.2); *see also* 29 U.S.C. § 481(e). Section 8(a) of the Local Bylaws provides the same requirement. *See* ECF

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

No. 13-4 at 14; ECF No. 21-4 at 15. Members who fail to pay dues are "in arrears" and not in good standing. ECF No. 13-3 at 57 (Section 21.9). Where the arrearage continues for two months, the member in arrears is suspended from the Union. *See id.* at 57–58 (Section 21.10). Suspended members must pay the full arrearage and $1.00 per month spent in arrears to be reinstated into the Union. *Id.* at 58 (Section 21.11). Members in arrears for more than twelve months cannot reinstate themselves, but rather must re-enroll as a new member. *Id.* at 59.

On October 9, 2015, the Union sent letters to members who were in arrears for more than two months. *See* ECF No. 13-26 at 4–5. The letters described the amount of the arrearage, and informed the members that they were suspended. *See, e.g.*, ECF No. 13-5 at 1; ECF No. 21-6 at 2–4. Nominations for candidates took place on November 3–4, 2015. Only members in good standing could be nominated or nominate a fellow member for office. *See* ECF No. 13-3 at 39 (Section 14.4). After the October 9, 2015 letters were sent out, some members contacted Financial Secretary-Treasurer (FST) Esker Bilger, and were put on a payment plan to regain good standing. *See, e.g.*, ECF No. 13-31 at 1–117. However, the option of entering into such a payment plan was not announced publicly to the Union membership. *See* ECF No. 13-6 at 4; ECF No. 13-27 at 6. The Union's computer specialist and administrative assistant, Brent Loughry, testified that he was not aware of any alternative payment arrangements. *See* ECF No. 13-26 at 3.[3]

---

[3] After the November nominations, the Union sent out another round of letters on November 18, 2015. Every member who received an October 9, 2015 letter also received a November 18, 2015 letter. These letters, of which there were two versions, confirmed the recipient's eligibility to vote in the upcoming election regardless of whether the recipient had paid his or her dues. *See* ECF No. 13-9 at 1; ECF No. 13-10 at 1. One version thanked "those that have made payment arrangements with the Local," and stated that "[f]or those not electing to make payment arrangements, we will begin the process of notifying payroll to take the appropriate actions in collecting the balance of dues amounts still owed." *See, e.g.*, ECF No. 13-9 at 1. The other version stated that "[y]ou have paid in full and are in good standing with the Local." *See, e.g.*, ECF No. 13-10 at 1. Both versions of the November 18 letter, however, stated that "[w]e also wish to confirm your eligibility to vote in the upcoming 2015 General Election." ECF No. 13-9 at 1; ECF No. 13-10 at 1. Despite the conferral of good standing with respect to voting, the conferral

While some members were allowed to enter a payment plan and thus become eligible for the November 3–4, 2015 nominations and/or the subsequent December 2, 2015 election, others were not. Two members who sought to run for office, Harry Johnson and Glenn Jarrett, were not permitted to enter a payment plan to come back into good standing. Harry Johnson, who was nominated for the position of Shop Steward #1, Montgomery Bus Division, *see* ECF No. 13-24 at 2, was informed on November 6, 2015 that he was not in good standing and therefore not eligible to be elected. ECF No. 13-24 at 5. Similarly, Glenn Jarrett, who was nominated for the position of Shepard Parkway Division Executive Board Member #2, *see* ECF No. 13-25 at 2, was informed on November 6, 2015 that he was not in good standing and not eligible to be elected, ECF No. 13-25 at 6 — even though Jarrett had previously signed a letter agreeing to a payroll deduction, *see* ECF No. 13-25 at 3.

Other members in arrears were allowed to run for office. Eleven members were permitted to run in the election that had unpaid dues, and nine of these members had arrearages significant enough to warrant suspension from the Union under Section 21.10 of the CGL. For instance, Luis Chevalier had an arrearage of $867.90, but was able to run for System Maintenance Shop Steward #2. Another member, John Gaines, was $617.50 in arrears, *see* ECF No. 13-12 at 1, but ran and was elected to the position of Bladensburg Division Executive Board Member & Shop. ECF No. 13-29 at 1.Wilbur Lucas, was $482.70 in arrears, *see* ECF No. 13-21 at 1, but was able to run and was elected to the position of Station Manager Divisions Shop Steward #2. ECF No. 13-29 at 3.

In Defendant's Motion for Summary Judgment, Defendant does not dispute the material facts presented in the Secretary's Motion. ECF No. 21. Rather, Defendant instead relies heavily

---

of good standing did not automatically extend to the members' eligibility to actually run for office. *See* ECF No. 13-1 at 25 (citing ECF No. 13-6 at 5).

on the testimony of FST Esker Bilger and employee Brent Loughry, who explain that the Union's payment records were kept by hand for many years, and efforts in 2014–2015 to modernize the system and verify individual records was a time-consuming process. *See* ECF No. 21-5 at 87. Mr. Loughry, who assisted with data management, testified in his deposition that "we had so many problems getting the dues records from Metro," ECF No. 21-8 at 16, and that, at the time, the records were filled with "discrepancies," *id.* at 16–17. Defendant acknowledges in its briefing that "[t]he election coincided with a massive undertaking by the Financial Secretary to modernize the Union's record keeping system in order to keep more accurate dues payments information. Because of the scope of that project and the large size of the Local, the Act [LMRDA] was not followed to the letter." ECF No. 21-1 at 9. Defendant further admits that "[t]he election notices were sent out one day late under the notice provision of the Act. However, this was a benign mistake that was not made maliciously. Any payment arrangements that were made by Local 689 were in keeping with the spirit of the Act in ensuring that as many people could participate in this election." *Id.* at 10.

The union officer election was held on December 2, 2015 for forty separate positions. *See* ECF No. 13-29 at 1–3. The largest margin of victory was 930 votes for the position of Maintenance and Construction At-Large Executive Board, *id.* at 2, and the smallest margin of victory was eleven votes for the position of Bladensburg Division Executive Board Member #2, *id.* at 1. Following member protests and an investigation by the Secretary of Labor, the Secretary filed a Complaint on June 13, 2016, seeking to void the election of twenty-two of these positions based upon the notice issue and "failing to apply [the Union's] candidacy qualifications in a uniform manner."[4] ECF No. 1 at 6. The Secretary subsequently moved for summary judgment on

---

[4] These positions are: President, First Vice President, Second Vice President, Financial Secretary-Treasurer, Recording Secretary, Rail Operating Division Executive Board Member, Station Managers Division Executive

January 12, 2017. ECF No. 13. The Union opposed the Secretary's motion and filed a cross-motion for summary judgment on February 23, 2017. ECF No. 21. The Court has reviewed the record in its entirety, the parties' arguments, and relevant authorities, and now grants the Secretary's Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

The party seeking summary judgment bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met that burden, the non-moving party must come forward and show that such an issue does exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The party

---

Board Member, Bladensburg Division Executive Board Member #1, Bladensburg Division Executive Board Member #2, Four Mile Run Division Executive Board Member #2, Montgomery Division Executive Board Member #1, Montgomery Division Executive Board Member #2, Northern Division Executive Board Member, Shepherd Parkway Division Executive Board Member #1, Shepherd Parkway Division Executive Board Member #2, Western Division Executive Board Member, Maintenance and Construction At-Large Executive Board Member #1, Maintenance and Construction At-Large Executive Board Member # 3, Rail Car Maintenance Shops and Inspection Executive Board Member, Bus Maintenance Garage/Shop Executive Board Member, System Maintenance Executive Board Member, and Track & Structure & PLNT Executive Board Member. ECF No. 1 at 1–2.

opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal alterations omitted).

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny both motions if it finds there is a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Poulos*, No. CIV.A DKC 2008-0251, 2009 WL 3216622, at *4 (D. Md. Sept. 29, 2009) (citation omitted).

### III. ANALYSIS

#### A. The LMRDA

Title IV of the LMRDA, codified at 29 U.S.C. §§ 481–483, "regulates the procedures that labor unions must follow when conducting elections. [The Act's] purpose is to ensure 'free and democratic' union elections." *Solis v. Commc'ns Workers of Am., AFL-CIO*, 766 F. Supp. 2d 84, 87 (D.D.C. 2011) (citing *Wirtz v. Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. 492, 496 (1968)). The statutory scheme set forth in the LMRDA balances Congress's desire to rectify "revealed abuses in union elections" with "its long-standing policy against unnecessary governmental intrusion into internal union affairs." *Chao v. Branch 4798 Nat. Ass'n of Letter Carriers*, 532 F. Supp. 2d 783, 788 (E.D. Va. 2008) (citing *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 471 (1968)).

Under Section 402(a) of the LMRDA, 29 U.S.C. § 482(a), a union member who wishes to challenge the validity of an election must first exhaust remedies within the union. *See Chao v. Branch 4798 Nat. Ass'n of Letter Carriers*, 532 F. Supp. 2d at 788. Once the member "has invoked such available remedies without obtaining a final decision within three calendar months," the member "may file a complaint with the Secretary within one calendar month thereafter." 29 U.S.C. § 482(a). Upon filing a complaint with the Secretary, "[t]he Secretary shall investigate such complaint." 29 U.S.C. § 482(b). If the investigation gives the Secretary probable cause to believe an election violation has occurred, "and has not been remedied, he [or she] shall, within sixty days after the filing of such complaint, bring a civil action against the labor union" in district court. *Id.* These pre-filing procedures have been followed here. *See* ECF No. 1 ¶¶ 23–26.

For the Court to nullify the results of a union election based upon violations of the LMRDA, the Secretary must show: (1) that the union's conduct constitutes a statutory violation, and (2) that the violation "may have affected the outcome" of the election. *See* 28 U.S.C. § 482(c)(2); *Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union*, 166 F. Supp. 2d 109, 112–13 (D.N.J. 2001). If the Court determines that a violation has been established, "the Secretary enjoys the benefit of a presumption that the outcome of the challenged election may have been affected." *Chao v. Local 54*, 166 F. Supp. 2d at 112–13. Thus, "proof of a violation establishes a prima facie case that the outcome of the election may have been affected and shifts the burden to the defendant to show that the established violation did not affect the election results." *Id.* (citing *Wirtz v. Hotel Employees Union Local 6*, 391 U.S. 492, 506-507 (1968)); *see also Solis v. Local 9477*, 798 F. Supp. 2d 701, 705 (D. Md. 2011).

B. **Statutory Violations**

Defendant concedes that notices of the Union election were not sent out at least fifteen days prior to the election, in violation of 29 U.S.C. § 481(e) (Section 401(e) of LMRDA) and the Union CGL and Local Bylaws. ECF No. 21-1 at 10 ("The election notices were sent out one day late"); *see also Chao v. Branch 4798 Nat. Ass'n of Letter Carriers*, 532 F. Supp. 2d 783, 789–90 (E.D. Va. 2008) (finding notice violation where "[t]his question is easily answered in the affirmative given this record and [the Union's] concession that § 401 violations occurred in the December election"). In general, notice provisions of Section 401 are "strictly and literally applied." *See Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union*, 166 F. Supp. 2d 109, 112–14 (D.N.J. 2001) (compiling cases). The "reasonableness of a union's conduct" is not a defense, *see id.*, nor does a violation of the LMRDA require a showing of bad faith or ill motive. *Solis v. Local 9477*, 798 F. Supp. 2d 701, 704–05 (D. Md. 2011) ("The violation of this statute does not hinge upon motive of the violator."). Moreover, not only did the Union violate the LMRDA by failing to timely notify members, it violated § 11(b) of its own Bylaws and § 14.7 of the CGL as well. Under the LMRDA, unions are required to conduct their elections in accordance with their own bylaws and constitution. 29 U.S.C. § 481(e); 29 C.F.R. §§ 452.2, 452.109.

Additionally, the undisputed evidence also demonstrates that the Union did not abide by the Act's direction to use "reasonable qualifications uniformly imposed" in determining members' eligibility to run for office, or to conduct the Election "in accordance with the constitution and bylaws" of the Union. 29 U.S.C. § 481(e). Under the CGL and Local Bylaws, to be eligible to be nominated or elected for office, a member is to be in continuous "good standing" with his or her Local Union for two years preceding nomination. *See* ECF No. 13-3 at

37–38; ECF No. 13-4 at 14; ECF No. 21-4 at 140. While some members were permitted to regain good standing by entering the alternative payment plans, some were not — and this option was not announced to the wider membership. Some members were not aware that the payment plan option existed, and the November 3–4 nominations also occurred before the November 18, 2015 letters, which confirmed good standing and eligibility to vote, were sent out to the membership.

At least two members, Harry Johnson and Glenn Jarrett, were precluded from running for office because they were in arrears. However, at least eleven members with arrearages were allowed to run, and five were actually elected to office. *See* ECF No. 13-1 at 26. Defendant does not contest that these transgressions occurred, but seeks to justify them as an effort to encourage maximum participation in the election, while Union staff were simultaneously updating an outmoded records database filled with errors. However, Defendant's good intentions do not operate as a barrier against the clear mandate of the LMRDA, *see Chao v. Branch 4798 Nat. Ass'n of Letter Carriers*, 532 F. Supp. 2d 783, 789 (E.D. Va. 2008) ("once a district court finds election violations occurred, the court *shall* declare the election to be void and direct the conduct of a new election under the supervision of the Secretary.") (emphasis in *Chao*) (citing 29 U.S.C. § 482(c)), and the Union's conduct constituted a statutory violation under the LMRDA.

### C.  The Violation(s) May Have Affected the Outcome of the Election

Finding a violation of the LMRDA establishes a prima facie case that the outcome of the election may have been affected, and the burden shifts to the Union to prove otherwise. *See Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union*, 166 F. Supp. 2d 109, 113 (D.N.J. 2001) (citing *Wirtz v. Hotel Employees Union Local 6*, 391 U.S. 492, 506-507, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968)); *see also Marshall v. Am. Postal Workers Union, AFL-CIO*, 486 F. Supp.

79, 82 (D.D.C. 1980) (discussing that the Court need not find that the violation actually affected the outcome of the election, but need only look to the "maximum theoretical possibility."). The Union is unable to rebut the presumption here.

First, the notice violation could have affected every eligible member that did not vote: 8,067 members out of 13,535. The delay in notice may have prevented the 570 members living outside the Washington, D.C., Maryland, and Virginia areas from casting their vote, as voting took place only at locations in those areas, ECF No. 13-33 at 3, and the Union had no absentee voting procedures in place. See ECF No. 13-33 at 1–3. Second, at least twelve members allegedly received no election notice at all, which is greater than the eleven-vote margin in one race, for Bladensburg Division Executive Board Member #2. ECF No. 13-1 at 33 (citing ECF No. 13-29). Other races had similarly small margins of 12, 15, and 15. ECF No. 23 at 7 (citing ECF No. 13-29 at 1–3); *see also Marshall v. Am. Postal Workers Union, AFL-CIO*, 486 F. Supp. 79, 83–84 (D.D.C. 1980) (considering margins of victory and finding that union's failure to provide all members with ballots may have affected the outcome of election).

With respect to the arrears and good-standing issue, members not in good standing would have no way of knowing that they could regain good-standing by paying less than the full amount of their arrears, because the payment plan option devised by FST Bilger was not announced to the membership. These members may have been dissuaded from running for office during the nominations process. Plaintiff has also identified two potential candidates that were not permitted to run for office because of their arrearages, while other candidates clearly were permitted to run. The Union puts forth nothing to rebut this evidence that the election may have been affected by these violations. *See generally*, ECF No. 21-1; *see Brock v. Connecticut Union of Tel. Workers, Inc.*, 703 F. Supp. 202, 210 (D. Conn. 1988) (noting that "Defendant has

provided no evidence which refutes either the violation or the inference that [violation] affected the outcome of the election" and ordering new election).

Finally, this is not among the "narrow circumstances" where a Court's refusal to order a new election may be proper on equitable grounds, such as where there is evidence of gamesmanship by the losers, *Chao v. Branch 4798 Nat. Ass'n of Letter Carriers*, 532 F. Supp. 2d 783, 791 (E.D. Va. 2008) (describing scenario where "election violations were challenged by an incumbent union faction which intentionally violated the LMRDA election rules, lost the election, and then complained to the Secretary in an effort to undo the election results.") (internal alterations omitted), or "where changes taken by the union in an untainted intervening election adequately resolve the LMRDA violations." *Solis v. Am. Fed'n of Gov't Employees*, 763 F. Supp. 2d 154, 167 (D.D.C. 2011). Here, there have been no allegations of foul play, and the Union has not remedied the violations prior to the instituting of this action. *See* ECF No. 1 ¶ 26. Additionally, the next Union election is scheduled for December 2018, nearly 18 months from the writing of this Opinion. This contrasts with cases where the upcoming election is just a few months away. *Compare Chao v. Branch 4798*, 532 F. Supp. 2d at 794 (finding that the purposes of the LMRDA would be served by having the Secretary supervise the next regularly-scheduled election, where the union had already conducted a re-run election, and upcoming election would take place ten months from the Court's decision).[5]

Therefore, for the reasons stated in this Opinion, the Court shall declare the December 2, 2015 election held by Local 689, Amalgamated Transit Union, void for the positions listed at ECF No. 1 at 7, and directs the Union to conduct a new election for these offices under the supervision of the Secretary of Labor.

---

[5] Additionally, while the Court acknowledges Defendant's claim that a new election will be costly, this fact does not provide a sufficient legal basis for the Court to overlook the clear violations of the LMRDA in this case.

## IV. CONCLUSION

For the foregoing reasons, the Secretary's Motion for Summary Judgment, ECF No. 13, is granted and the Union's Motion for Summary Judgment, ECF No. 21, is denied. A separate Order shall issue.

Date: July 18, 2017

GEORGE J. HAZEL
United States District Judge